POWERS & MAYER, INC., AND POWERS & MAYER MANUFACTURING CO., PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6862.   Promulgated February 26, 1927.

1. The petitioners were affiliated for the year 1919.
2. The Commissioner's action in eliminating $50,000 for alleged good will from invested capital affirmed.

*W. W. Ross, Esq.,* for the petitioners.
*A. R. Marrs, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency of $7,199.73, income and profits taxes for 1919. The errors alleged are the respondent's refusal to allow the corporations to file a consolidated return, the elimination of a good will item of $50,000 from the invested capital of Powers & Mayer, Inc., and the refusal to grant special assessment.

### FINDINGS OF FACT.

Powers & Mayer, Inc., is a New York corporation organized in January, 1913. Powers & Mayer Manufacturing Co. is a Rhode Island corporation organized during 1916. Prior to 1893, Mayer and Powers were traveling salesmen for a large jewelry concern. In that year they organized a wholesale jewelry business of their own, operating under the firm name of Powers & Mayer. The partners each invested $10,000 and worked together until 1906 or 1907. In one of these years Powers, because of ill health, was forced to retire from business. Thereafter, Mayer continued the business as an individual, but under the firm name, until January, 1913.

In the early years of the partnership, it was necessary to do a large amount of advertising. The partners entertained extensively both on the road and in New York, where the firm was located. One of the partners was continually on the road selling merchandise. The firm dealt only in diamonds and platinum jewelry, carrying no cheap jewelry whatsoever. The initial advertising consisted of sending out monthly postal cards. About 20,000 postal cards were sent out each year. A little later the firm sent out blotters to the trade. They carried full page advertisements in two jewelry magazines for approximately six months out of each year. As the business expanded the partners conceived the idea of jewelry exhibitions to be given in their New York offices. These exhibitions attracted buyers and prospects from all over the United States. The partners exhibited new fashions and latest designs to as many as one hundred and fifty or two hundred people representing high-class retail stores scattered throughout the country. Later these exhibitions were held in the stores of the largest buyers of Powers & Mayer products. The buyer invited his customers to see the exhibits of Powers & Mayer with invitations furnished by the firm. These exhibitions were later discontinued because competing firms took advantage of the opportunity to make copies of the designs and creations of Powers & Mayer.

The good will of the larger buyers was further solicited by gifts, such as stickpins or rings. In addition to their personal efforts and the cards and blotters aforementioned, circular letters were sent out. These letters would show reproductions of one or two new creations which the firm was introducing. They also sent out sample sheets which could be placed in a loose-leaf folder wherein various articles of jewelry were advertised. The money spent by the firm in advertising and by the partners in entertaining and personal solicitation of business amounted to approximately $5,000 per year from 1893 to 1913.

During the latter part of 1912 or in January, 1913, Mayer was approached by certain employees of Powers & Mayer in regard to acquiring an interest in the business. The employees who were principally interested had been with the firm for many years. Mayer decided to incorporate rather than create a partnership, and let the employees purchase stock in the corporation. The business was accordingly incorporated as Powers & Mayer, Inc., with an authorized capital of $350,000, par value of the stock being $100.

The employees who were seeking an interest in Powers & Mayer employed one Stroock as their attorney. In the negotiations leading to the incorporation of the business and the sale of the stock to the employees, Mayer insisted on a good will value for the business

of $75,000. : The employees objected to such value, contending that a $50,000 value was enough. Mayer finally agreed to a good will value of $50,000. ' '

On January 25, 1913, Mayer, as owner of the business of Powers & Mayer, submitted to the corporation a proposition whereby he offered to sell, assign and convey all his right, title and interest in the business, and the good will, stock on hand, net profits, tools, machines, furniture and the like, for 3,500 shares of the capital stock of the company and the assumption by the company of the liabilities standing on the books. The good will was specifically valued in the proposition at $50,000, and it was further provided that the corporation should give Mayer its promissory note bearing interest at 6 per cent for his equity in the business should the same exceed $350,000. He further guaranteed the payment and collection of all bills receivable appearing on the books. This proposition was accepted and the transfer was made in accordance therewith. Mayer received, in addition to the 3,500 shares of stock, which was all the capital stock, the corporation's notes for $364,875. The interest payments on the notes have been regularly met by the corporation and the principal has been reduced to approximately $30,000. In addition to his business, Mayer transferred certain patents to the corporation.

After the incorporation and the transfer of the business by Mayer, he entered into an agreement with the employees on the twenty-fifth of March, 1913, whereby he contracted to sell and the employees agreed to purchase stock of the corporation under certain conditions. The employees desired to purchase 1,000 shares of stock, but Mayer refused to part with so large an interest in the corporation. The agreement recited in part as follows:

AGREEMENT made this 25th of March, 1913, between JOSH W. MAYER, of the State of New York, party of the first part, and MAX D. DREYFUS, FREDERICK C. KOPF, MILTON O. KEPLER, FELIX B. VOLLMAN, and FRANK H. WELLS, of the same place, parties of the second part.

WITNESSETH:

WHEREAS, the party of the first part has been engaged in the jewelry business for upwards of twenty (20) years, and lately under the firm name and style of Powers & Mayer, Inc., and has organized a company under the laws of the State of New York, for the sole purpose of giving the parties of the second part, who have been in his employ for some years, an interest in the profits of the said business; and

WHEREAS, it is the desire of all parties to keep their said stock interests intact; and

WHEREAS, the parties of the second part desire to purchase a certain number of shares of stock of the company, of the party of the first part, in a larger amount than their present financial means will permit, and have requested the party of the first part to assist them in financing the acquisition of their several stock interests; .

. Now, THEREFORE, in consideration of the foregoing premises and of the sum of One Dollar, lawful money of the United States, in hand paid by each of the

parties to the other, the receipt whereof is hereby acknowledged, and the mutual covenants hereinafter contained, It Is Agreed as follows:

First: The party of the first part agrees to sell and the parties of the second part agree to purchase a certain number of shares of the capital stock of Powers & Mayer, Inc., at one hundred dollars per share, as follows:

|                            | Shares. |
|----------------------------|---------|
| Max D. Dreyfus             | 125     |
| Frederick C. Kopf          | 150     |
| Milton O. Kepler           | 150     |
| Felix B. Vollman           | 75      |
| Frank H. Wells             | 50      |

Second: All payments made on account thereof shall be credited to the parties of the second part and endorsed on the obligation hereinafter referred to. Immediately upon the issuance of certificates to each of the parties of the second part, they agree, at the same time, to endorse said certificates to the party of the first part, who shall hold them as collateral security for the obligation to be signed by the respective parties, which said obligations shall be substantially in the following form: * * *.

The balance of the agreement provided for a right in Mayer to repurchase the stock should any of the employees be discharged, or die, or become disabled, or for any reason cease to be employees of the company. It also provided for an option in the parties of the second part to purchase additional stock in a like amount as that set opposite their names in the first paragraph. It further provided that good will " shall be considered an asset in the sum of $50,000 but in no greater amount."

The following table shows the net tangible assets and net profits or losses for each of the years 1909 to 1925, inclusive:

| Year. | Profits and losses(—). | Net tangibles. | Year. | Profits and losses(—). | Net tangibles. |
|-------|------------------------|----------------|-------|------------------------|----------------|
| 1909 | $36,228.35 | $376,683.03 | 1918 | $158.24 | $326,371.58 |
| 1910 | 21,117.00 | 444,784.06 | 1919 | 148,796.07 | 475,167.65 |
| 1911 | 22,425.55 | 485,735.79 | 1920 | 58,180.38 | 484,876.15 |
| 1912 | 55,049.01 | 300,000.00 | 1921 | −31,291.28 | 496,396.12 |
| 1913 | 15,142.00 | 315,142.00 | 1922 | −34,017.15 | 462,378.97 |
| 1914 | −54,043.76 | 260,773.24 | 1923 | −3,321.54 | 459,057.43 |
| 1915 | 25,466.58 | 286,239.82 | 1924 | −135.67 | 458,921.76 |
| 1916 | 8,640.92 | 294,873.74 | 1925 | −14,343.81 | 444,577.95 |
| 1917 | 35,901.97 | 328,224.32 | | | |

The outbreak of the World War and a strike in the jewelry trade in New York, both occurring during the fall of 1914, resulted in a large loss to Powers & Mayer, Inc., and made it impossible to meet its contracts. Mayer decided to establish a factory in Providence, R. I., so as to avoid dealing with labor unions. The workmen in Providence were not skilled in working with diamonds and platinum. Mayer was compelled to use such workmen as were available, with a resulting loss of considerable time and material. The continuance of the war necessitated the corporation entering the cheap jewelry

field because platinum was no longer available. White gold was developed as a substitute and this class of jewelry was extensively exploited. Mayer determined to incorporate the Providence plant in order to prevent confusion among the trade. Accordingly, the Powers & Mayer Manufacturing Co. was incorporated under the laws of Rhode Island some time during 1916. This corporation came into existence solely for the purpose of handling cheap jewelry, although the plant at Providence, after the war, continued to manufacture some diamond and platinum jewelry.

The authorized capital stock of Powers & Mayer Manufacturing Co. was 1,000 shares, par value $100. The first issue of 250 shares was purchased by Powers & Mayer, Inc. No stock of the Providence company was outstanding except that held by Powers & Mayer, Inc. On March 1, 1919, Mayer purchased the 250 shares of the Providence company held by Powers & Mayer, Inc. During 1919 he purchased the remaining 750 shares, paying $75,000 therefor. No one other than Mayer owned stock in the Providence company after March 1, 1919, and through December 31, 1919. The stockholders and the percentage of ownership of each in Powers & Mayer, Inc., and Powers & Mayer Manufacturing Co. on January 1, 1919, were as follows:

| Stockholders. | POWERS & MAYER, INC. (The New York corporation.) | | POWERS & MAYER MFG. CO. (The Rhode Island corporation.) | |
|---|---|---|---|---|
| | Number of shares. | Percentage. | Number of shares. | Percentage. |
| J. W. Mayer | 2,950 | 84 2/7 | | |
| F. C. Kopf | 150 | 4 2/7 | | |
| F. B. Vollman | 75 | 2 1/7 | | |
| M. D. Dreyfus | 125 | 3 4/7 | | |
| M. O. Kepler | 150 | 4 2/7 | | |
| F. H. Wells | 50 | 1 3/7 | | |
| Powers & Mayer, Inc | | | 250 | 100 |
| Total | 3,500 | 100 | 250 | 100 |

On December 31, 1919, the stockholders and percentage of ownership of the two corporations were as follows:

| Stockholders. | POWERS & MAYER, INC. (The New York corporation.) | | POWERS & MAYER MFG. CO. (The Rhode Island corporation.) | |
|---|---|---|---|---|
| | Number of shares. | Percentage. | Number of shares. | Percentage. |
| J. W. Mayer | 3,350 | 95 5/7 | 1,000 | 100 |
| F. C. Kopf | 10 | 2/7 | | |
| F. B. Vollman | 120 | 3 3/7 | | |
| E. O. Busson | 20 | 4/7 | | |
| Total | 3,500 | 100 | 1,000 | 100 |

No one other than those listed in the above tables owned any stock in either company during 1919. Mayer was the president of both corporations. Busson was an employee of Powers & Mayer, Inc., and was sold stock by Mayer under an agreement similar to that with the five employees. The stock of Kopf, Dreyfus, Kepler and Wells was acquired by Mayer during 1919. Subsequent to acquiring the stock held by Kopf, Mayer sold him the 10 shares held by him on December 31, 1919.

The respondent held that the corporations were not affiliated from March 1, 1919, to the end of the year, disallowed any value for good will, and refused special assessment.

OPINION.

MORRIS: At the hearing the petitioner abandoned its contentions as to special assessment, leaving the questions of whether or not the two corporations were affiliated and the value of good will, if any, for invested capital purposes.

As Powers & Mayer, Inc., owned all the outstanding capital stock of Powers & Mayer Manufacturing Co., for the first two months of 1919, there is no question of the affiliation of the two corporations for that period. The petitioners contend for affiliation for the last ten months of that year on the ground that Mayer owned all the outstanding stock of one corporation and substantially all the stock of the other. The authorized capital stock of Powers & Mayer Manufacturing Co. was 1,000 shares, par value $100 per share. The issued stock as of January 1, 1919, was 250 shares and was held by Powers & Mayer, Inc. On March 1, 1919, Mayer purchased the 250 shares. Thereafter he purchased the remaining stock of Powers & Mayer Manufacturing Co. in the total amount of $75,000, and on December 31, 1919, was the sole owner of the 1,000 shares of issued and authorized capital stock. Subsequent to March 1, 1919, Mayer was the only stockholder of Powers & Mayer Manufacturing Co.

The stock of Powers & Mayer, Inc., was all held by Mayer or by employees of the company, that held by the employees at no time amounting to more than 15.72 per cent of the outstanding stock. Mayer, on March 1, 1919, was the owner of at least 84.28 per cent of the outstanding stock. The stock of the employees was held subject to the right of repurchase by Mayer should there be a discontinuance of the employer-employee relationship, and during the year he repurchased certain shares so that on December 31, 1919, he was the owner of 95.7 per cent of the outstanding stock. As recited in the agreement, which has been set out in the findings of fact, the employees purchased the stock for the sole purpose of securing an interest in the profits of the business. They endorsed their

stock to Mayer, who held it as collateral security for balances due. We are of the opinion that the ownership of stock in the two corporations by Mayer is sufficient to meet the requirements of the statute for affiliation. *Appeal of Isse Koch & Co.*, 1 B. T. A. 624; *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666.

The second issue relates to good will value, if any, which may be included in computing invested capital. The facts upon which the petitioner relies to prove the existence of good will and its value were the expenditure of approximately $100,000 in advertising, entertaining and soliciting business from 1893 to 1913; the proposition made by Mayer to the corporation and accepted by it, under the terms of which the business and assets, including good will valued at $50,000 were turned over to the corporation in exchange for stock and the corporation's note; and the agreement between Mayer and the employees for the sale and purchase of stock, in which agreement good will was specifically valued at $50,000.

These facts do not convince us that good will of any value was turned in to the corporation. Notwithstanding the fact that other intangible property, claimed to have a substantial value, was included in the assets taken over by the corporation, the earnings for the four years prior to 1913 show that Powers & Mayer, Inc., earned only slightly more than 8 per cent on its net tangible assets. For the year 1913 the percentage was less than 5 per cent. The earnings subsequent to 1913 are not corroborative of the value claimed. We have not failed to consider the testimony introduced by the petitioner relative to the abnormal conditions which existed during 1914 to 1918, but, even if such years were eliminated from consideration, the evidence fails to bear out the petitioner's contention.

> *Judgment will be entered on 15 days' notice, under Rule 50.*